Chancellor J. Johnston
delivered the opinion of the court.
There is no doubt that the intention, to be gathered from the whole face of the will, must govern. And that the leading purposes of the testator should be consulted, rather than those which appear to have been secondary. The difficulty is not about the principles of construction, but the application, of them.
A good index of a testator’s general intention, will be found by' considering a case in which every part of his will would have had full operation ; in which his every wish would have been completely-gratified, and none disappointed. The will (if we view it in reference to such a contingency,) grojipes the legatees together, as *71 ilioy stood in the mind of the testator, and informs us of the rela« ti?e degrees of affection with which he regarded them.
I presume we shall learn this testator’s leading purposes, by looking at what he directed, had all things gone so that his favorite scheme of keeping up the planting till 1836, had taken effectj in which case, according to the concessions ©f all parties, every clause and part of his will would have had an unrestricted operation.
If we view this will in this light, the testator’s intention is plain* The estimation in which he held his Kilkenny relations, (a phrase, which, for brevity’s sake, l substitute for his sisters and brother,, Mary, Caty and Michael,) was such, that he was willing to give them nearly the whole income of his estate, until 1838, and to add to this, in 1838, one fourth of the corpus, with two thousand dollars besides; while to his natural son, he gave barely one fourth-of the corpus, in 1888, with a small annuity, until that time, for hies--education ; and to his sons, each, only a fourth, of the corpus, in 1838.
Judging by these bounties, who can hesitate to say, that the sons were less objects of his bounty, than the Kilkenny relations 1 Or' that his leading intention was to give more to the latter, than to the former Í
So much for the general intention. And so much on the construction to be gathered from the whole face of the will*
Now, if there is any thing on the will to shew, that, in any con. tingency which has happe.-ed, the testator would have increased the piovisiou for his sons, or diminished that of his Kilkenny friends, —he must be obeyed. But is there any thing to shew this ?
That part of the will by which he authorises his executors to-break up and sell the plauting establishment, is relied on.
What effect is to follow the execution of a power, may be learned by considering the purpose for u hich the power was conferred. The effect to be allowed must conform to. this purpose ; for here, as in every other part of a will, the testator’s intention must pre. Vail.
Now, if the testator gave this power, with a view to enable the executors to increase the legacies of the sons, and to diminish those of the Kilkenny relations, he has not said so. If the conversion of the property into bonds, at interest, was a circumstance going to abate his affection for the Kilkenny friends, or strengthen that, for the sons, he has not told us so ; nor is there any thing in tb© sature of the thing itself, from which we can reasonably infer, that *72 in eonaequenco of it, his affections would have undergone this change.
The testator empowers the executors to sell before 1838, if they deem it advantageous. If his intention was to enable the executors to sell for the purpose of transferring the bulk of income to bis sons — if this was the sense in which he used the word, “ advantageous,” there was no need for anif ” in the case.' He might have saved hims'elf the trouble of conferring the discretion, ary power, and exorcised it himself, by ordering a sale presently, for, without doubt, such a transfer would be advantageous to the sons.
Why did he not order present distribution ? Plainly, because he wished to accumulate income for those to whom he gave it. tic thought that a planting estate, when he made his will, would produce as much income as its value, at interest But he was uucer-' tain whether this would continue to bn the case. Executors tiiight not be able to manage as well as an owner; produce might fail, or seasons ch mge, or lands fail. All this vs ould reduce the income, to the injury of those entitled to it. In such a enuju icture, it would be advantageous t > them to have the capital changed, and put at interest. But it might happen, that at such time, property was laboring under an unusual, though temporary; depression in price. To sell, would injure those entitled to the corpus. To meet all contingencies, the executors were clothed with a discretion. But their povver was a trust. They were trustees for all the legatees ; not for any one in particular; much less for one against another; They must act for the advantage of all, or so as to inflict the least possible injury on any.
The executors have executed this power; and it is not doubted they have executed it in good faith. Bui if it would have been bad faith in them to sell for the avowed purpose of transferring the income — or for the express purpose of revoking the legacies ito the Kilkenny relations ; if the doing these things was not the pur¡pose for which the power was conferred on them ; — is that a sound (construction which would give their act that effect! Can that be a true interpretation, which says that a trust for relieving against a tc >o scanty income, shall, if executed, have the effect of extinguish-in g the income ?
It is said the income intended for the Kilkenny relations, was in come from planting. The testator is supposed to have- given th phi income — so long as it arose from planting, but no longer. N ow, if lie had said so, from the most whimsical motives, or trom at j motive at all — if he bud said so plainly, his discretion must *73 have governed. But he has said no such thing. What he has said¿ is, that he gives the income of his estate. He makes no qualification. His words will take in profits from all sources, without regard to the quality of the capital. If an estate, when sold, ceases to produce-income, the argument is good. If this estate, now, has no income, there is no right in the Kilkenny relations to have any-But if there is, their claim is good.
I would not do injustice to the point made. The zeal with ‘which the argument was urged, evinced that it was grounded on a convic» tion of its correctness. I have, therefore, cast about in every direction for any thing to support it: but in vain.
The argument proceeds upon this : — that the testator having, by the second clause, provided for keeping his estate together for planting, has exclusive reference to this state of things, in all the legacies of income which he creates in the four succeeding clauses. That, therefore, the income intended to give, was income from planting. That the power given to the executors, in the se¿* venth clause, to sell the planting establishment, was a power to de-¡ stroy the income given, by destroying that from which alone it could, accrue.
The testator no where says that he gave the income, on the supposition that it was to come exclusively from planting. If this was his meaning, we can come at it only by implication. But it would be against rule to resort to implication, when it would have the effect of revoking, or restricting the import of, an express bequest; to do so, would amount to nothing less than preferring a conjectural intent to bis express declaration.
But if we may resort to implication, let it he borne in mind, that it is still the testator’s real intention we are to inquire after. The argument undertakes to prove that the testator did not intend that the words, “ income of my estate,” should have their natural meaning — and that it was his intention that the legatees should not have“ income of his estate,” unless it arose in a particular way.
The suggestion of the possible existence of a capricious or unreasonable motive, is no ground for implication. Then can any one assign a sensible reason, (and shall we, without reason, imply an intention contrary to the testator’s expression,) why the testator Should have been willing that his Irish friends should have the in. come of his estate, if the estate was planted, but unwilling they should have it. if the same property, without diminution of value, or injury to any one, was changed to another form : a change nod disagreeable to him, since he expressly authorized it ?
*74 it is conceded, that if the estate had been planted until 1838, ae-©ordiugto his favorite scheme, he intended, the legatees to have the income,. It is also conceded, that in that case, he intended his sons should have no more than a fourth of the corpus, in 1838.
Now, what is there in the will to shew an intention to give his sons more ?
What is there in the will from which to imply, (for, I repeat, there is no express declaration,) that a mere alteration of his estate changed his intention towards his legatees'! That it worked a cha ige in the relative degrees of affection he bore them before 1 That in giving his bounties, he had regard, not to the qualities of his legatees, or the benéíits the bounties would confer on them, but to the qualities of the estate ? Or that he loved first one and then another, by turns, just as Ins estate happened to be in this or thalr posture'!
On the whole, I can make nothing of this argument, but that it asks the ci.urt to strive alter an implication to defeat the plain, import ot the testator’s words ; and to conclude that an intent existed contrary to those words, upon the unauthorized supposition, that he was governed by motives so capricious as to be almost incompatible with a disposing capacity.
1 am persuaded there is nothing in the mere selling of the property to render it inconsistent with the testator’s intention, that the legatees of income should continue to take the profits of the estate after the sale.
The expression, “ if any,” in the sixth clause, has been relied on to shew that the testator contemplated the cessation of income before ici38. But it is obvious be did not employ these words to express a doubt, whether the income would continue, but whether, after paying the bequosis ehaiged on it, there would be any balance. That balance, ■“ if any,” he bequeathed by the sixth clause.
There is another provision, however, which has been supposed to be fuconsiotent with a right to income after a side.
The testator gave the executors power to sell before 1838, and directed them to divide “ the proceeds”' into four equal parts. It is argued, that, upon the sale, the vyiil vested distributary rights in “ the proceeds,” as a specific body of property; and that a right sprang up to have instant distribution ; which would defeat any claim to have it retained to raise income for the legatees of in. come.
It may be conceded, that distributary rights vested in “ the prov *75 coeds,” so soon as they came into existence. The mistake seems ■to oe in concludi g that this fixes a time for distribution. If there is nothing declaring that distribution shall take place instantly, the mere existence ot a distiibutary right is by no means inconsistent with a right to have the property retained, that its profits may, in the mean time, be paid to others. Nothing is more common than the creating vested, and transmissable, distributary, interests in property, and at the same delaying the distribution for the purpose of giving the intermediate profits to others. If this could be doubted, the case of a transfer of stock to A, in trust, to pay the dividends' for a term to B, with remainder over to C and D, discharged of all trusts, might be given as an example. That is this very case.
It was competent for this testator to have directed, if he so intended, that the distribution should take place on the sale. But he has not done so. Nor has he given the executors any power to fix a time for distribution. Their power was to select a time for sale, only. We are not to infer that the testator intended the distribution to attend the sale, when such construction is not only unnecessary, but would, in the contingencies which have happened, revoke legacies plai >ly given, and swell others beyond the obvious general intent of the testator. This construction would allow his executors to make his will this or that, not according to his inten. .tiou, but their pleasure.
An expression in the codicil, whereby the testator requires the two thousand dollars, which by the will was to be vested tor the support of Nelson, to be paid to his Kilkenny friends, “ at the time of the sale, or division of his estate, as in his will directed,” has been relied on, as evidence, that he intended the sale and distribution to be cotemporaneous. And, no doubt the sale he here speaks of, was expected by him, to be cotemporaneous with the distribution The sale he speaks of was the one he directed in his will. There, is no direction, though there is a permission, for any sale before 1838. The legacy in the codicil is a substitute for the investment which the will ordered to be made for Nelson; which investment was to be made in 1838, and not before, and was to depend on her being “then” alive. Is not this evidence that he intended this legacy to be paid in 1838.
The only remaining objection to the construction I have given this will, on which 1 shall remark, is, that it contravenes that equality at which the testator aimed. But how does it appear that he did aim at equality ? If equality was his object, he would have divided the corpus equally, or left the profits to pursue-the capital, *76 He has done neither. He divides the capital unequally ; to some he gives capital, but no income ; to others, income without capital and to nearly all unequal portions of income.
Petigru and Glover, for motion.
Bellinger, contra.
Filed 14th March, 1837.
The motion is granted : and it is decreed, that distribution of the capital of the estate be made in 1838, and not before; and that, in the mean time, the profits go to the legatees of income.
J. JOHNSTON,
We concur,
WM. HARPER,
H. W. DESAUSSURE,